IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:
PIONEER HEALTH SERVICES, INC.[1]　　　　　　　　　　NO. 16-01119-NPO
　　　　　　DEBTOR　　　　　　　　　　　　　　　　　　CHAPTER 11

## MOTION TO SELL SUBSTANTIALLY ALL OF THE ASSETS OWNED BY MEDICOMP, INC., FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, WITH LIENS ATTACHING TO PROCEEDS OF SALE, OUTSIDE THE ORDINARY COURSE OF BUSINESS

COMES NOW Pioneer Health Services, Inc. (the "Movant" or the "Debtor") and files this, its *Motion to Sell Substantially All of the Assets Owned by Medicomp, Inc., Free and Clear of Liens, Claims and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business* (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

### INTRODUCTION AND BACKGROUND

1.　　Debtor initiated this case by the filing of a Voluntary Petition under Chapter 11 of the Bankruptcy Code on the 30th day of March, 2016. Movant is the Debtor-in-Possession in this Chapter 11 case. Subsequent thereto, the Debtor has been, and is, the duly qualified, and acting Debtor-in-Possession in this Chapter 11 case. The Debtor is in control of its assets and is managing and operating the Debtor-in-Possession's businesses.

---

[1] On April 6, 2016, the bankruptcy cases of *Pioneer Health Services of Patrick County, Inc.*, No. 16-01120-NPO; *Pioneer Health Services of Newton County, LLC*, No. 16-01121-NPO; *Pioneer Health Services of Stokes County, Inc.*, No. 16-01122-NPO; *Pioneer Health Services of Choctaw County, LLC*, No. 16-01123-NPO; *Pioneer Health Services of Oneida, LLC*, No. 16-01124-NPO; and *Pioneer Health Services of Monroe County, Inc.*, No. 16-01125-NPO were administratively consolidated into the bankruptcy case of *Pioneer Health Services, Inc.*, No. 16-01119-NPO. Debtor *Pioneer Health Services of Early County, LLC*, No. 16-01243-NPO, filed its Chapter 11 bankruptcy case on April 8, 2016, and was administratively consolidated into the "main" case of *Pioneer Health Services, Inc.*, No. 16-01119-NPO, on April 15, 2016. Debtor *Medicomp, Inc.*, No. 16-01126, filed its Chapter 11 bankruptcy case on March 30, 2016, and was administratively consolidated into the "main" case of *Pioneer Health Services, Inc.*, No. 16-01119-NPO, on June 29, 2016. All of these cases are hereinafter referred to collectively as "the Debtor".

2. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105, 363, 365, 503, 507, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

3. The Debtor Medicomp, Inc. ("Medicomp") is the provider of the physical therapy services "divisions" of the Pioneer family of companies.

5. SOLIC Capital Advisors, upon being retained as financial advisor on July 1, 2016, began compiling an electronic data room for the Debtor containing historical operating, financial, legal and regulatory facility related information. SOLIC granted data room access to a number of parties expressing initial interest in acquiring the Debtor. SOLIC has received numerous expressions of interest, a letter of intent and it has conducted extensive negotiations and discussions with various interested parties for the sale of the Debtor. SOLIC received an asset purchase agreement for the purchase of Medicomp from California Rehabilitation Services, Inc. d/b/a Interstate Rehabilitation Services ("CRS") dated as of August 18, 2017, a copy of which is attached, incorporated by reference and marked as **Exhibit "A"**. Additionally, disclosure schedules, as amended, related to the transaction were also prepared by the Debtor and CRS, and a copy of the amended disclosure schedules is attached, incorporated by reference and marked as **Exhibit "B"**.

6. At this time, the CRS proposal represents the highest and bed bid received, with the Movant and CRS in mutual agreement on the terms of the attached asset purchase agreement. The CRS proposal represents the best opportunities for this entity to continue to operate and to preserve its going concern value, to retain employment of as many employees as possible and to generate the greatest return to creditors and parties in interest.

7. As required by the CRS agreement, the Debtor filed, prosecuted and obtained approval of a *Motion, Pursuant to Bankruptcy Code Sections 105(A), 363, 365, 503 and 507, Bankruptcy Rules 2002, 3007, 6004, 6006, 9007 and 9014 for Entry of (I) Order Approving Bidding Procedures and Stalking Horse in Connection with Sales of Assets of Debtor, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing and (IV) Granting Related Relief [Medicomp, Inc.]* **[DK #2275]** (the "Bid Procedures Motion") seeking approval of CRS as a "stalking horse", approving bidding procedures, scheduling an auction and sales hearings and related matters. The Court entered an Order on October 17, 2017 **[DK #2431]** granting the Bid Procedures Motion and that Order is hereinafter referred to as the "Bid Procedures Order". A copy of the Bid Procedures Order is attached, incorporated by reference and marked as **Exhibit "C"** hereto.

8. The Bid Procedures Order schedules the Motion for hearing on **November 21, at 1:30 p.m.**, schedules an auction of the assets of the Debtor, and establishes certain deadlines for the filing of overbids, sale objections and related matters. The auction of assets is scheduled for **November 21, 2017** at the United States Bankruptcy Court, Southern District of Mississippi, 501 E. Court Street, Jackson, MS 39201, at **10:30 a.m.**

9. The Bid Procedures Order not only approves and establishes bid procedures in connection with the sale of the assets of the Debtor, it also establishes CRS as the "Stalking Horse Bidder" in connection with the transaction that is contemplated by and between the Debtor and CRS. As noted, the Debtor and CRS negotiated an asset purchase agreement (the "APA"), which is Exhibit "A" hereto. This APA not only establishes the terms and conditions of the contemplated sale from the Debtor to CRS, it shall be used as the template APA for any other

interested purchasers or bidders who elect to make a bid for the Assets (as defined in the attached Bid Procedures Order).

10. All interested bidders who desire to extend an offer for the assets, will be afforded that opportunity by submitting a Qualified Bid for the assets by the Bid Deadline of **5:00 p.m. (Central Time), November 2, 2017.**

11. The Bid Procedures Order describes the form of bids, and approves the selection of CRS as a Stalking Horse Bidder.

12. The Debtor believes that a sale of its Assets as contemplated by this Motion and the Bid Procedures Order will maximize the value of the estate. While the exact Assets that will be sold are dependent upon the terms of a Qualified Bid(s) as well as defined in the Bid Procedures Order, the Debtor seeks authority to sell all of the Assets.

13. The Debtor believes that in the event the Motion is approved, the result will be a successful sale of the Debtor's Assets.

14. Accordingly, the Debtor at this time seeks authority to sell the Assets.

15. In addition to the relief set forth above, upon a hearing with respect to the Motion, the Debtor requests entry of an order that will, *inter alia*, (i) find that the buyer(s) of the Assets has bid, negotiated and purchased in good faith, and (ii) waive any stays, if they exist, set forth in the Bankruptcy Rules so the sale can be closed as soon as possible.

16. A prompt sale of the Assets will likely enable the Debtor to realize good value for the Assets. The Debtor believes that the terms and conditions set forth in the Motion, and in the Bid Procedures Order, are fair and equitable to all interested purchasers and the Debtor, and thus reflect a transaction that will ultimately result in a successful sale of the Debtor's Assets. The Debtor believes that any material delay in consummating the proposed sale of the Assets will

result in a reduction in the value of the Debtor's Assets. Therefore, the Debtor submits that the proposed sale of the Assets is justified and should be approved by the Court.

17. As part of this Motion, and consistent with the Bid Procedures Order, the Debtor shall also seek authority to assume and assign certain contracts and leases to the ultimate purchaser. Further, as soon as practicable, and in no event later than the Bid Deadline, all Qualified Bidders shall designate those contracts and leases as to which any bidder desires that the Debtor assume, and then assign, or assign, to the ultimately successful purchaser. Such designation shall provide the amount, method and timing of any economic cures or other cures of default that the ultimate prevailing purchaser may need, or desire, to submit to the Debtor in connection with the assumption and assignment process. To the extent that there are disputes regarding any of the cure amounts or other issues, the applicable parties may resolve such dispute by mutual agreement or by seeking recourse from the Court. Objections to any such motions to assume and assign are due by **November 17, 2017** and will be heard and considered by the Court at the Sale Hearing on November 21, 2017.

18. Accordingly, in the event there are contracts and/or leases that are designated, Debtor shall immediately prepare and file, by **November 3, 2017**, a Motion to Assume and Assign Assumed Contracts or Assumed Leases. Any amounts necessary to cure any existing defaults in connection with any contracts or leases shall be paid by in accordance with the APA.

19. In accordance with Bankruptcy Rule 6004(f)(1), sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtor has determined that a public auction of the Assets will enable the Debtor to obtain the highest or otherwise best offer in a sale of its Assets at this time and is in the best interests of the Debtor, its estate, and its creditors.

20.     Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides, in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the second business judgment of the debtor. *See, e.g., In re Trans World Airlines, Inc.*, Case No. 01-00056, 2001 WL 1820326, at *10-11 (Bankr.D.Del. Apr, 2, 2001); *Meyers v. Martin(In re Martin)*, 901 F.3d 389, 395 (rd Cir. 1996).

22.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c )whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Del. & Hudson Ry.*, 124 B.R. at 176. In *In re Del. & Hudson Ry.*, the court further held that:

> [o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties
> with adequate and reasonable notice, that the sale price is fair and reasonable and that the [proposed] purchaser is proceeding in good faith.

124 B.R. at 176.

23.     The business judgment rule shields a debtor's management from judicial second guessing. *See In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005). Once a debtor articulates a

valid business justification, "[t]he business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Id.* Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

24. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g., In re Lionel Corp.,* 722 F.2d 1063,1071 (2nd Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.,* 107 F.3d 558, 56465 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. at 659 ("It is a well established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.,* 99 B.R. 124,130 (Bankr. N.D. Ga. 1988)). Here, in light of the Debtor's current condition, and prior orders requiring the Debtor to sell its assets, no further justification is needed.

25. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy sales. *See, e.g., O'Brien Envtl. Energy,* 181 F.3d at 537; *In re Fin. News Network, Inc.,* 126 B.R. 152, 156 (S.D.N.Y.1991) (as amended) ("[C]ourt-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates.")

26. The sale of the Assets will be consummated only after thorough consideration of all viable alternatives and after concluding that such transactions are supported by sound business justifications. Since the Debtor and its creditors have agreed, through the entry of a number of prior orders, that the Assets must be sold, the business justifications for the requested sales are self-evident. Based on available information, the Debtor believes that the consideration to be received for the Assets under the APA will be fair and reasonable under the circumstances.

27. As further assurance of value, the offers will be tested through the Auction consistent with the requirements of the Bankruptcy Code and the Bankruptcy Rules and pursuant to the Bid Procedures Order. Consequently, the fairness and reasonableness of a sale ultimately will be considered in light of "market exposure" through an open and fair auction process and in light of any available alternatives.

28. The Debtor farther submits that it is appropriate to sell the Assets and to assign the contracts and leases free and clear of (i) any Permitted Encumbrances or (ii) any permitted Liens, with any such Liens attached to the net sale proceeds of the Assets, as and to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
    (4) such interest is in *bona fide* dispute; or
    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

29. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free

and clear" of Liens. *In re Decora Indus., Inc.,* Case No. 004459 (JJF), 2002 WL 32332749, at *7 (D. Del. May 20, 2002) ("Because § 363(f) is drafted in the disjunctive, the satisfaction of any of the requirements outlined is sufficient to warrant Debtors' sale of the Debtor's assets free and clear of all Interests as provided in the APAs, except with respect to such Interests as are assumed liabilities pursuant to the APA Agreements").

30. The Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to the transfer of the Assets and the assignment of contracts and leases pursuant to the APA. In particular, the Debtor believes that at least section 363(f)(2) of the Bankruptcy Code will be met in connection with the transactions proposed under the APA because each of the parties holding liens on the Assets, if any, will consent, or, absent any objection to this Motion, will be deemed to have consented to, the Motion.

31. Any holder of a lien also will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Debtor for the sale of the Assets to the successful bidder at the Auction, in the same order of priority, with the same validity, force, and effect that such creditor had prior to such sale, subject to any claims and defenses that the Debtor and its estate may possess with respect thereto. Accordingly, section 363(f) of the Bankruptcy Code authorizes the sale of the Assets and the assignment of the contracts and leases free and clear of any such Liens.

32. The purchaser of the Assets is not liable for any of the Debtor's liabilities as a successor or otherwise, unless the purchaser expressly assumes such liabilities as provided for in the APA. Extensive case law exists providing that claims against the winning bidder are directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a buyer.

33. Although section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined in the Bankruptcy Code. *Folger Adam Security* v. *DeMatteis/MacGregor .IV,* 209 F.3d 252, 257 (3d Cir. 2000). In *In re Trans World Airlines, Inc.,* the Third Circuit specifically addressed the scope of the term "any interest." 322 F.3d 283, 28889 (3d Cir. 2003). The Third Circuit observed that while some courts have "narrowly interpreted interests in property to mean *in rem* interests in property," the trend in modern cases is toward "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289 (citing 3 *Collier on Bankruptcy 1363.06[1]*).

34. Courts have held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from preexisting claims. *See The Ninth Ave. Remedial Group* v. *Allis-Chalmers Corp.,* 195 B.R. 716, 732 (N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Co.* v. *Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 89, 9394 (2d Cir. 1988) (holding channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re New England Fish Co.,* 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (holding transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); *In re Hoffman,* 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (holding that transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes was permissible).

35. Here, this Chapter 11 Case was filed in good faith. The sale process has also been, and will be, conducted in good faith and at arm's length. The Debtor expects that if the Court

approves a sale of the Assets, it will be able to satisfy the Court that (a) the purchaser engaged in arm's length negotiations with the Debtor and did not exert control or undue influence over the Debtor, (b) the purchaser is a completely and wholly unrelated entity to the Debtor, (c) the purchaser does not, and will not, share any common incorporators, officers, directors, or stockholders with the Debtor, and (d) the purchaser is not an insider of the Debtor.

36. For obvious reasons, the very purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's presale conduct. Furthermore, the Debtor will provide notice of the proposed sale to all known parties in interest that may assert claims or interests relating to the Assets against the Debtor, including trade creditors, contract counterparties, lenders, and other parties known to the Debtor to be asserting claims relating to the Assets.

37. Under section 363(f) of the Bankruptcy Code, a purchaser of assets is entitled to know that the Assets are not subject to latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above cited case law, the order approving the sale of the Assets may provide that the purchaser of the Assets is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Assets.

38. The Debtor believes that the ultimate APA will be negotiated at arm's length and in good faith. Thus, any Bidder(s) approved by the Court to purchase some, or all, of the Assets, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

39. Accordingly, absent a showing of fraud, collusion between a purchaser and a debtor, or an attempt by the purchaser to take grossly unfair advantage of other bidders, courts

will uphold the transaction under section 363(m) of the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.,* Case No. Civ. A. 01226 (SLR), 2002 WL 500569, *1 (D. Del. Mar. 26, 2002) (upholding bankruptcy court's ruling premised on finding that there was 'no evidence of unlawful insider influence or improper conduct,' nor was there "any evidence of fraud or collusion between [the prevailing purchaser] and [debtors], or [the prevailing purchaser] and other bidders," that sale was in good faith); *see also Kabro Assocs. of West Islip, LLC. v. Colony Hill Assocs. (In re Colony Hill Assocs.),* 111. F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.")

40. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that upon a hearing hereof, this Honorable Court will enter its Order granting the Motion and authorizing Scott Phillips to execute such instruments of transfer as commercially reasonable and necessary to consummate and effectuate the contemplated transaction hereunder, and that the Court will approve the sales of the Assets free and clear of liens, claims, encumbrances and interests. The Debtor prays for general relief.

DATED, this the \_\_\_17th\_\_\_ day of October, 2017.

           Respectfully submitted,

           PIONEER HEALTH SERVICES, INC.

           By Its Attorneys,

           LAW OFFICES OF CRAIG M. GENO, PLLC

           By: *[signature]*
                 Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Pioneer Health\Pleadings\Sale - Medicomp\Motion to Sell 10-17-17.wpd

**CERTIFICATE OF SERVICE**

    I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to all creditors and parties in interest, all creditors of Medicomp and to the following:

Ronald H. McAlpin, Esq.
ronald.mcalpin@usdoj.gov

Christopher J. Steiskal, Esq.
christopher.j.steiskal@usdoj.gov

Sean C. Kulka, Esq.
sean.kulka@agg.com

Brian I. Swett, Esq.
bswett@mcguirewoods.com

David N. Usry, Esq.
David.Usry@usdoj.gov

William H. Leech, Esq.
bleech@cctb.com

Darryl S. Laddin, Esq.
dladdin@agg.com

James A. McCullough, II
jmccullough@brunini.com

Robert Dozier, Esq.
robert.e.dozier@usdoj.gov

Jeffrey M. Pomerance, Esq.
jpomerance@sulmeyerlaw.com

THIS, the 17th of October, 2017.

_____
Craig M. Geno