

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: November 16, 2017**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**
**PIONEER HEALTH SERVICES, INC.[1]**                          **NO. 16-01119-NPO**
                            **DEBTOR**                          **CHAPTER 11**

### AGREED ORDER

THIS CAUSE having come on for hearing on the *Motion, Pursuant to Bankruptcy Code*

*Sections 105(A), 363, 365, 503 and 507, Bankruptcy Rules 2002, 3007, 6004, 6006, 9007 and 9014*

*for Entry of (I) Order Approving Bidding Procedures and Stalking Horse in Connection with Sales*

*of Assets of Debtor, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale*

*Hearing and (IV) Granting Related Relief [Pioneer Health Services, Inc.]* **[DK #2274]** (the "Motion")

and subsequent Notice **[DK #2387]** filed herein by Pioneer Health Services, Inc. (the "Movant" or

"Debtor"), and upon the objections thereto filed by Med One Capital Funding, LLC ("Med One")

---

[1] On April 6, 2016, the bankruptcy cases of *Pioneer Health Services of Patrick County, Inc.*, No. 16-01120-NPO; *Pioneer Health Services of Newton County, LLC*, No. 16-01121-NPO; *Pioneer Health Services of Stokes County, Inc.*, No. 16-01122-NPO; *Pioneer Health Services of Choctaw County, LLC*, No. 16-01123-NPO; *Pioneer Health Services of Oneida, LLC*, No. 16-01124-NPO; and *Pioneer Health Services of Monroe County, Inc.*, No. 16-01125-NPO were administratively consolidated into the bankruptcy case of *Pioneer Health Services, Inc.*, No. 16-01119-NPO. Debtor *Pioneer Health Services of Early County, LLC*, No. 16-01243-NPO, filed its Chapter 11 bankruptcy case on April 8, 2016. *Pioneer Health Services of Early County, LLC*, No. 16-01243-NPO was administratively consolidated into the "main" case of *Pioneer Health Services , Inc.*, No. 16-01119-NPO, on April 15, 2016. All of these cases are hereinafter referred to collectively as "the Debtor".

[DK #2296], Amur Equipment Finance, Inc. f/k/a Axis Capital, Inc. ("Axis") [DK #2323], the Official

Committee of Unsecured Creditors ("OCUC") [DK #2327], SAI Global Compliance, Inc. ("SAI") [DK

#2328], Siemens Financial Services, Inc. ("Siemens") [DK #2335], Commercial Loan Investment IV,

LLC ("CLI") [DK #2337], the United States Trustee ("UST") [DK #2338], the United States of America

on behalf of the Internal Revenue Service ("IRS") [DK #2340], the Court having been advised that all

the objecting parties have resolved the objections by agreement and/or by prior Orders: Med One [DK

#2395], Axis [DK #2393], SAI [DK #2388], and CLI [DK #2389], and this Order should be entered

memorializing the agreement of the parties, setting deadlines and granting other relief. The Court

does hereby find, adjudicate and order as follows, to-wit:

1.      The Debtor initiated this case by the filing of Voluntary Petition under Chapter 11

of the Bankruptcy Code on the 30th day of March, 2016.  Since filing bankruptcy, the Debtor has

remained in possession of its property and has continued to operate its business as debtor-in-

possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      This Court has jurisdiction of the subject matter herein and the parties hereto pursuant

to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105, 363, 365, 503, 507, 1107, related statutes, related

rules and various orders of reference.  This is a core proceeding.

3.      Debtor is the owner of all the subsidiaries that have filed bankruptcy and owner of

various non-bankrupt entities.  It is also the "management company" for all "operating" entities.  In

addition, it provides consulting, billing and collection services to non-affiliated third parties.

4.      SOLIC Capital Advisors, upon being retained as financial advisor on July 1, 2016,

began compiling an electronic dataroom for the Debtor containing historical operating, financial,

legal and regulatory facility related information.  SOLIC granted dataroom access to a number of

parties expressing initial interest in acquiring the Debtor.  SOLIC has received numerous expressions

of interest, a letter of intent and it has conducted extensive negotiations and discussions with various

interested parties for the sale of the Debtor.  SOLIC received an asset purchase agreement for the

purchase of the Debtor from Lackey Healthcare Management, LLC ("Lackey") dated as of August

14, 2017, a copy of which was attached to the Motion, incorporated by reference and marked as

Exhibit "A".  Additionally, disclosure schedules related to the transaction were also prepared by the

Debtor and Lackey, and a copy of the disclosure schedules was attached to the Motion, incorporated

by reference and marked as Exhibit "B".

5.     At this time, the Lackey proposal represents the highest and bed bid received, with

the Movant and Lackey in mutual agreement on the terms of the attached asset purchase agreement.

The Lackey proposal represents the best opportunities for this entity to continue to operate and to

preserve its going concern value, to retain employment of as many employees as possible and to

generate the greatest return to creditors and parties in interest.

6.     The Lackey agreement contemplates the filing, by the Debtor, of the Motion seeking

approval of Lackey as a "stalking horse", approving bidding procedures, scheduling an auction, a

sale hearing and related matters.  This was a material inducement to Lackey in entering into the asset

purchase agreement.  By the Motion, Debtor seeks approval of Lackey as  a stalking horse in

connection with the transaction.

7.     As noted, following arm's length negotiations, the Debtor and Lackey agreed to a

form of 11 U.S.C. § 363 sale asset purchase agreement (the "APA"), and that agreement is

Exhibit "A" to the Motion.  The assets to be included within the sales transactions (hereinafter

referred to as the "Assets") shall only include the Purchased Assets (as that term is defined in the

APA) and shall not include the Excluded Assets (as that term is defined in the APA).  The sales

transaction described therein is subject to higher or otherwise better offers through an auction process pursuant to Sale Procedures, as set forth herein.

8.      As set forth in the APA, the Debtor has agreed to provide Lackey (the "Stalking Horse Bidder"), with a break-up fee of $20,000.00 upon the certain terms and conditions set forth in the APA. The Debtor has further agreed to entertain offers for the Assets that are "covered" by the APA only in amounts that are in excess of the purchase price offered by the Stalking Horse Bidder as set forth in the APA which is a material inducement to the Stalking Horse Bidder's agreement to submit its bid.

9.      The sale of the Assets pursuant to the APA is subject to higher or otherwise better offers. To ensure that the highest or otherwise best offer is received for the Assets, the Debtor seeks to establish procedures for the submission of competing bids at an auction.

10.      The following bidding procedures and sales process for the sale of the Assets (the "Sale Procedures") are approved:

      **A.**      **Bid Procedures**

            (i)      <u>Qualified Bidders</u>. The Debtor shall seek to identify and recognize a number of bidders as qualified to bid on the Assets, based on, among other things, statements of interest and certain financial information demonstrating to the Debtor's satisfaction the bidders' financial wherewithal to consummate a purchase of the Assets (each, a "Qualified Bidder").[2] The Debtor shall notify all Qualified Bidders in writing of their designation as Qualified Bidders and their ability to participate in the bidding process. Any party interested in purchasing the Assets may seek to become a Qualified Bidder and participate in the bidding process by notifying the Debtor and its counsel prior to the Bid Deadline (as such term is defined below) of its interest in bidding on the Assets and providing such information as may be required by the Debtor to demonstrate such potential

---

[2] For avoidance of doubt, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder(s) for purposes of the Sale Procedures.

bidder's financial wherewithal to consummate a purchase of the Assets and assume operations as the Debtor immediately upon closing the transaction(s), and by submitting a Good Faith Deposit (as such term is defined below). The Debtor may determine which additional parties constitute Qualified Bidders.

(ii)     Due Diligence. The Debtor will afford any potential Qualified Bidder such due diligence access or additional information as may be reasonably requested by the prospective Qualified Bidder and that, in its business judgment, the Debtor determines to be reasonable and appropriate, subject to the Qualified Bidder's execution of an appropriate confidentiality agreement covering such diligence materials and information. The Debtor will coordinate all reasonable requests for additional information and due diligence access from prospective Qualified Bidders with Qualified Bidders' requests being treated as a higher priority than prospective Qualified Bidders. Unless otherwise determined by the Debtor, in its discretion, the availability of additional due diligence to a prospective Qualified Bidder will cease from and after the Bid Deadline (as such term is defined below).

(iii)    Non-Qualified Bidders. Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process ("Non-Qualified Bidder"). A Non-Qualified Bidder will be permitted to conduct initial due diligence, only until the Court approves the Bid Procedures Motion, but not be permitted to conduct extensive due diligence, and will not be able to make a bid for the Assets under the Sale Procedures or participate in the Auction (as such term is defined below).

(iv)    Asset Purchase Agreement. All Qualified Bidders must submit to the Debtor, the Official Committee of Unsecured Creditors of Debtor (the "Committee") Capital One, National Association ("Capital One"), and the Internal Revenue Service (the "IRS") an asset purchase agreement(s) that is "marked up" to reflect any revisions that the Qualified Bidder has made to the APA or the APAs for the submission of Qualified Bids (the "Competing APA"). The offer shall:

a)     provide that the bidder offers to purchase the Assets upon terms stated in the offer;

b)     clearly delineate all components of the proposed purchase price; including, but not limited to, a precise and complete list

of all executory contracts and unexpired leases which the bidder proposes to have the Debtor assume and assign to the bidder, as well as the cure amounts for each executory contract and unexpired lease the bidder is willing to pay toward cure costs;[3]

c)      provide that the bidder's offer is irrevocable upon acceptance by the Debtor at the Auction;

d)      disclose the relationship, if any, between the bidder and the Debtor and its insiders or affiliates;

e)      provide that the bidder's offer is subject to no, or minimal, due diligence contingencies, and if any contingencies, that they be removed by the Bid Deadline, and is not subject to board approval or financing contingency; and

f)      does not contain any other material conditions to closing.

(v)      Bid Deadline.  Bids must be submitted on or before 5:00 p.m. (Central Time), November 17, 2017 (the "Bid Deadline").  At the time that overbids are submitted, those entities submitting overbids must also designate the executory contracts and unexpired leases they desire for the Debtor to assume and assign or, in the cases of assumed unexpired leases or executory contracts, those unexpired leases or executory contracts the entity submitting the overbid desires the Debtor to assign to that entity.  Similarly, the Stalking Horse and all Qualified Bidders shall designate, on or before November 17, 2017, by 5:00 p.m. (Central Time), those executory contracts and unexpired leases they desire the Debtor to assume and assign or, to assign in the cases of previously assumed unexpired leases and executory contracts.  Thereafter, on November 17, 2017, the Debtor shall file the appropriate motion or motions seeking authority of the Court to assume and assign, or simply to assign, the designated executory contracts and unexpired leases.  Non-debtor contracting parties must file their objections and responses to the motions to assume and assign, or motions to assign, on or before December 8, 2017 at 3:00 p.m..  In the event objections to the motions to assume and assign, or motions to assign, are filed, they shall be heard and considered by the Court at the Sale Hearing (which will be set for December 11, 2017,

---

[3] Nothing contained in this Motion shall constitute a determination as to whether any contracts or unexpired leases are executory contracts or unexpired leases or should be treated as disguised financing arrangements.

at 1:30 p.m.).  A Qualified Bidder that desires to make a bid, and that
desires to designate executory contracts and unexpired leases to be
assumed and assigned, or assigned, shall submit via electronic mail,
U.S. Mail, facsimile or other delivery service, written copies of its bid
to the following:

Debtor's Investment Banking Firm:
Mr. Greg Hagood
SOLIC Capital Advisors, LLC
3284 Northside Parkway, Suite 450
Atlanta, GA 30327
Fax No. 404-846-0600
Email: ghagood@soliccapital.com

Debtor's Chief Restructuring Officer:
Mr. Scott Phillips
Healthcare Management Partners LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Fax No. 215-689-4386
Email: sphillips@hcmpllc.com

Counsel for the Debtor:
Craig M. Geno, Esq.
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
Fax: 601-427-0050
Email: cmgeno@cmgenolaw.com

Counsel for the Committee:
Darryl S. Laddin, Esq.
Arnall Golden Gregory LLP
171 17th Street, NW, Suite 2100
Atlanta, GA 30363
Fax: 404-873-8121
Email: dladdin@agg.com

Counsel for Lackey:
Andy Taggart, Esq.
Taggart, Rimes & Graham, PLLC
1022 Highland Colony Parkway, Suite 101
Ridgeland, MS 39157
Email: andy@trglawyers.com

Counsel for Capital One:
William Leech, Esq.
Copeland, Cook, Taylor & Bush, PA
600 Concourse, Suite 100
Ridgeland, MS 39157
Fax: 601-856-7626
Email: bleech@cctb.com

Brian I. Swett, Esq.
McGuire Woods, LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-818           .
Fax: 312-698-4551
Email: bswett@mcguirewoods.com

Counsel for the Internal Revenue Service:
Robert E. Dozier, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
555 Fourth Street, N.W.
Room 6211
Washington, D.C. 20001
Fax: 202-514-9868
Email: robert.e.dozier@usdoj.gov

## B.    Bid Requirements

(i)    Assets. Qualified Bidders may make a bid for all the Assets or some subset thereof. The Debtor reserves the right, in its discretion, to consider any bids for less than all of the Assets.

(ii)    Form and Content of Bid. A Qualified Bidder must submit its bid in a signed Competing APA. The bid shall contain the terms and conditions, and amount, of the offer being submitted by the bidder.

(iii)    Required Supporting Materials. A Qualified Bidder shall also furnish with its offer (a) written evidence of available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Debtor may reasonably request; and (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed in the Competing APA.

(iv)    Required Good Faith Deposit.   By the Bid Deadline, a Qualified Bidder must deposit with the Debtor's counsel a good faith deposit in

the amount of $15,000.00 (the "Good Faith Deposit"). The Good Faith Deposit must be made by a certified check or wire transfer and will be held by the Debtor's counsel of record subject to the remaining provisions of this Bid Procedures Motion.

(v)     <u>Bid Lots</u>.

The Debtor may offer the Assets for sale only in the following lot:

(a)     Lot 1 - Bulk Bid (everything as proposed and allocated in the APA).

(vi)    <u>Qualified Bid</u>. Subject to the terms of Section B(vii) below, a bid received by the Bid Deadline from a Qualified Bidder that meets the requirements in Sections B(i)-(iv) is considered a "Qualified Bid." The Debtor, in consultation with the Committee, the IRS and Capital One, reserves the right to waive material noncompliance with any one or more of these requirements and deem any otherwise non-qualifying bid to be a Qualified Bid. A Qualified Bid will be evaluated based upon factors such as: (a) the amount of the Qualified Bid; (b) the fair, net value to be provided to the Debtor under the Qualified Bid; (c) the ability to close or the likelihood of closing the proposed sale transaction without delay; and (d) any other factors that the Debtor, after consultation with the Committee, the IRS and Capital One, may deem relevant.

(vii)   <u>Rejection of Bid</u>. Notwithstanding the foregoing, the Debtor, in consultation with the Committee, the IRS and Capital One, shall be entitled to reject any Qualified Bid, in its discretion, if the Qualified Bid:

(a)     is on terms that are materially more burdensome or conditional than the terms of the APA;

(b)     requires any indemnification of such Qualified Bidder;

(c)     is not received by the Bid Deadline;

(d)     requires any regulatory or other approval that would unreasonably delay the closing;

(e)     does not satisfy Section B of the Sale Procedures;

(f)     contains any material conditions to closing; or

(g)      any other factors that the Debtor, in consultation with the Committee, the IRS and Capital One, may deem relevant and/or not in the best interest of the Debtor's estate.

Any bid rejected pursuant to this Section B(vii) shall not be deemed to be a Qualified Bid.

## C.    Auction Process

(i)      Bid Negotiations. Upon the receipt of a Qualified Bid or Qualified Bids, the Debtor, in consultation with the Committee, the IRS and Capital One, may negotiate with one or more Qualified Bidders regarding the terms of the applicable Qualified Bids.

(ii)     Auction. An auction for the sale of the Assets (the "Auction") will commence at 10:30 a.m. (Central Time) on December 11, 2017, at the U. S. Bankruptcy Court, Southern District of Mississippi, 501 E. Court Street, Jackson, MS 39201.

(a)      Qualified Participants. Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Stalking Horse Bidders and any Qualified Bidder that has been notified that it has submitted a Qualified Bid shall be eligible to participate in the Auction. The Debtor shall conduct the Auction consistent with the Sale Procedures and in a manner to maximize the consideration provided for the Assets.

(b)      Bidding Process. For all Lots and Selection of Successful Bidder. At the commencement of the Auction, The Stalking Horse Bidder shall submit its bid for all Lots as the initial bid (the "Opening Bid"). Subsequent to the Opening Bid, the next bid must exceed the Opening Bid by at least $20,000.00 with subsequent bidding increments of not less than $10,000.00 greater than that of the then-highest or otherwise best Qualified Bid. During the Auction, the Bankruptcy Court or the Debtor, in its discretion, in consultation with the Committee, the IRS and Capital One, may authorize different bid increments. Upon completion of the Auction, the Debtor, in consultation with the Committee, the IRS and Capital One, shall select the bidder (the "Successful Bidder"), if any, that has submitted the Qualified Bid, if any, which, in the Debtor's reasonable judgment, after consultation with the Committee, represents the highest or otherwise best offer and is in the best interest of the Debtor, its estate and its creditors (the "Successful Bid").

-10-

(c)     Factors Considered. In consultation with the Committee, the IRS, and Capital One, the Debtor will consider a number of factors in selecting the Successful Bidder or Bidders, including without limitation, (i) aggregate purchase price, (ii) composition of consideration, (iii) closing conditions, (iv) closing timeline/closing costs, and (v) commitment to community, employees and capital investment.

(d)     Debtor's Discretion. Except as specifically provided in Sections (b), (c), and (d) of this subsection, the Debtor, in its discretion, after consultation with the Committee, the IRS and Capital One, may conduct the Auction in any manner deemed reasonably prudent to obtain the highest or otherwise best result for the Debtor's estate.

11.     A hearing with respect to the forthcoming Motion to Sell (the "Sale Hearing") will take place at the Bankruptcy Court on December 11, 2017 at 1:30 p.m. The deadline for any party in interest to file any objections to the Motion to Sell shall be 3:00 p.m. on December 7, 2017 (the "Objection Deadline"). If any Successful Bidder is selected by the Debtor, in consultation with the Committee, the IRS and Capital One, the Debtor, in its discretion, will seek the entry of a final order from the Bankruptcy Court at the Sale Hearing approving and authorizing the proposed sale to the Successful Bidder on the terms and conditions substantially consistent with and in accordance with these Sale Procedures. The Debtor will also seek to have the bid (the "Back-up Bid") of the second-highest bidder (the "Back-up Bidder") approved in the event the Successful Bidder is unable or unwilling to close.

12.     The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any bidder whose bid was not the Successful Bid or the Back-up Bid. The Good Faith Deposit submitted by the Successful Bidder shall be applied against the payment of the purchase price at the closing of the sale to the Successful Bidder. Likewise, upon closing of a transaction with the Successful Bidder, the Back-up Bidder's Good Faith Deposit will be returned unless the

Successful Bidder is unable to close at which point the Successful Bidder's or Successful Bidder's Good Faith Deposit will be forfeited to the Debtor and the Back-up Bidder will become the Successful Bidder, and the Back-up Bidder's Good Faith Deposit shall be applied to the purchase price for the Back-up Bid.

13.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the bankruptcy estate.

14.     The Sale Procedures will establish sound parameters by which the proffered sale price of the Assets may be tested at the Auction, as well as the ensuing Sale Hearing, and evaluated as described herein.

15.     The Auction and Sale Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best or otherwise highest offer reasonably available at this time for the purchase of the Assets.  Moreover, the Sale Procedures will allow the Debtor to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction.

16.     The Sale Procedures as set forth herein and approved as the requested procedures (i) are the product of the Debtor's sound business judgment, after consultation with parties-in-interest, (ii) will foster and enhance bidding and thus maximize the offers for the Assets, and (iii) are thus in the best interest of the Debtor's estate and its creditors.

17.     The Sale Procedures are the result of extensive efforts by the Debtor and its professionals.  Accordingly, the Sale Procedures represent a sound business decision, made in good faith and with full information.  Potential bidders did not have specific input into the  development of the Sale Procedures, and thus the Sale Procedures were not subject to manipulation or self-dealing.

18.     Further, the Sale Procedures will foster and enhance the bidding process resulting in the maximization of potential bids.  The Sale Procedures clearly delineate a structured process for the solicitation, negotiation and proposition of bids, and auction, for the Assets.  Since prospective purchasers will receive notice of the Sale Procedures and certain relevant dates, these prospective bidders will have full notice of the ground rules to bid, or not bid, on the Assets.  This finality will cause prospective bidders to "step up to the plate" and present bids that would enable their participation at the Auction.  The openness of the process will ensure a fair process for all potential bidders.  The Sale Procedures will maximize potential offers by providing a fair, open and structured process.

19.     The implementation of the Sale Procedures - namely the sale of the Assets to a Successful Bidder - is in the best interest of the Debtor's estate and its creditors.

20.     As noted earlier, the Sale Procedures will maximize the offers for the Assets.  The sale of the Assets is in the best interest of the estate, until the process has played out, the Debtor cannot predict the final outcome.  However, the Sale Procedures should be permitted to proceed in order to flush out the highest or otherwise best offers of any and all prospective bidders.  The proposed Sale Procedures will accomplish that goal and thus the approval of the Sale Procedures is in the best interest of the estate and its creditors.

21.     The Debtor shall keep its major lender, Capital One Commercial Banking ("Capital One"), we well as the IRS, informed of, and shall provide Capital One and the IRS with, parallel insight and input into, developments regarding all elements of the bidding and sale process, including without limitation being notified of entities that express interest in purchasing the Assets and any bids that are received, as well as an express right to object to unqualified bids.  Capital One

and the IRS shall have the same informational and input rights as the Committee in the bidding and sale process for the Assets.

22.     The Debtor is directed to provide a copy of this Order to all creditors and parties in interest on the Reduced Service List maintained by this Court, all counter-parties to contracts or unexpired leases with the Debtor, all federal, state and county taxing authorities in all locations in which any of the Assets are located and all other parties as determined by this Court, including, all known bidders or prospective bidders having previously expressed an interest in the Assets to the Debtor or SOLIC.

23.     The limited objection of the OCUC and the objection of the IRS are resolved as follows:

(a)     the Successful Bidder at the proposed Auction shall pay any and all cure costs and/or transfer costs related to the Purchased Contracts[4];

(b)     the APA is modified to require Lackey or the Successful Bidder at the proposed Auction to pay all of the consideration owed to PHS under Section 3.1 of the APA (except for the deferred payment) at Closing;

(c)     the Motion and Section 11.2 of the APA are modified to clarify that Lackey or the Successful Bidder at the proposed Auction will remain liable for the full measure of damages in the event of an uncured default by the purchaser under the APA or a Competing APA;

(d)     the break-up fee is reduced to the sum of $20,000.00;

---

[4] Defined terms in this Order are taken from the APA and from the Motion.

(e)     the deposit of $15,000.00 is the deposit required by Lackey as well as any other Qualified Bidder;

(f)     the schedules to the APA have been amended to provide for additional disclosures regarding the connection by, between and among Lackey, the Debtors and any member of the McNulty family;

(g)     the initial bid in excess of the Opening Bid must exceed the Opening Bid by at least $20,000.00.   Subsequent bidding shall be in increments of $10,000.00;

(h)     the IRS is included in the list of counsel to whom Qualified Bidders must submit their bids prior to the proposed Auction. In addition, the IRS, through its counsel, shall be included in the multiple other sections of the Motion that provide for consultation with the IRS at various stages of the bid and sale process.

24.     The UST objection is resolved by the following:

(a)     The sale, and/or transfer, of property containing personally identifiable information shall be consistent with those procedures currently in place by the Debtor regarding the transfer of personally identifiable information in accordance with 11 U.S.C. § 363(b)(1)(A).

(b)     Any proceeds from the sale of the Assets shall be placed in a segregated, United States Trustee authorized debtor-in-possession account, and such proceeds shall not be disbursed until further order of the Court.  Any new debtor-in-possession account shall be subject to the United States Trustee's Chapter 11 Operating Guidelines and Reporting Requirements ("OGRR-11").

(c)     After the sale of the Assets closes, pursuant to Fed. R. Bankr. P. 6004(f)(1),

the Debtor shall file on the Court docket a Report of Sale with a copy of the

settlement statement within seven days after the sale closes.

# # **END OF ORDER** # #

AGREED AND APPROVED:

_____
Craig M. Geno
Attorney for the Debtor

/s/ Darryl S. Laddin
_____
Darryl S. Laddin
Attorney for the Official Committee
of Unsecured Creditors

/s/ Robert Dozier
_____
Robert Dozier
Attorney for the United States

/s/ Christopher J. Steiskal, Sr.
_____
Christopher J. Steiskal, Sr.
Office of the United States Trustee

/s/ Andy Taggart
_____
Andy Taggart
Attorney for Lackey Healthcare Management, LLC

SUBMITTED BY:

Craig M. Geno, Esq.; MSB No. 4793
Jarret P. Nichols, Esq.; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Pioneer Health\Pleadings\Sale - PHS\Bid Procedures Order Revised3 11-15-17.wpd