## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| PIONEER HEALTH SERVICES, INC., ET AL., | : | CASE NO. 16-01119-NPO |
| | : | |
| | : | JOINTLY ADMINISTERED |
| Debtors. | : | |

**JOINT MOTION OF THE COMMITTEE AND THE DEBTORS PURSUANT TO SECTIONS 506(A) AND 502(C) AND OF THE BANKRUPTCY CODE AND RULE 3012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO CLASSIFY, VALUE AND ESTIMATE CERTAIN FILED AND SCHEDULED SECURED CLAIMS**

The Official Committee of Unsecured Creditors of the jointly administered cases of Pioneer Health Services, Inc., *et al.* (the "Committee") and Pioneer Health Services, Inc., *et al.* (the "Debtors"; together with the Committee, the "Movants") pursuant to 11 U.S.C. §§ 506(a) and 502(c), Rule 3012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and other applicable law, move this Court for an order classifying, valuing and estimating the secured proof of claims identified on **Exhibit "A"** (the "Filed Secured Claims") and the claims listed on Schedule D of the Debtors Schedules identified on **Exhibit "B"** (the "Scheduled Secured Claims") for purposes of determining the appropriate classification and reserve amount for each of those claims under Class 5 of the Plan (defined below) at $0.00 (the "Motion to Value"). In support of their Motion to Value, Movants respectfully show the Court the following:

### General Background

1. On March 30, 2016 (the "Petition Date"), Pioneer Health Services, Inc. ("PHS") and its subsidiaries, Pioneer Health Services of Patrick County, Inc. ("Patrick"), Pioneer Health Services of Newton County, LLC ("Newton"); Pioneer Health Services of Stokes County, Inc.

03036121

("Stokes"), Pioneer Health Services of Choctaw County, LLC ("Choctaw"), Pioneer Health Services of Oneida, LLC ("Oneida"), Pioneer Health Services of Monroe County, Inc. ("Monroe"), and Medicomp, Inc. ("Medicomp"), each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Mississippi (the "Court"), and on April 6, 2016, another of PHS's subsidiaries, Pioneer Health of Early County, Inc. ("Early"), also filed a Chapter 11 bankruptcy case in the Court.[1]

2. Since the Petition Date, the Debtors have remained in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On June 27, 2016, the Court entered a final order [Docket No. 543] as amended and supplemented from time to time (the "Final Cash Collateral Order"), which among other things, authorized the Debtors to use the cash collateral of Capital One, National Association ("CONA") and/or the Internal Revenue Service ("IRS") under the terms and conditions set forth in the Final Cash Collateral Order.

4. As set forth in the Final Cash Collateral Order and proof of claims filed by CONA, as of the Petition Date, Patrick, Newton, Stokes, Oneida, Early, and Monroe and certain

---

[1] On April 6, 2016, the bankruptcy cases of *Pioneer Health Services of Patrick County, Inc.,* No. 16-01120-NPO; *Pioneer Health Services of Newton County, LLC,* No. 16-01121-NPO; *Pioneer Health Services of Stokes County, Inc.,* No. 16-01122-NPO; *Pioneer Health Services of Choctaw County, LLC,* No. 16-01123-NPO; *Pioneer Health Services of Oneida, LLC,* No. 16-01124-NPO; and *Pioneer Health Services of Monroe County, Inc.,* No. 16-01125-NPO were administratively consolidated into the bankruptcy case of *Pioneer Health Services, Inc.,* No. 16-01119-NPO. Debtor *Pioneer Health Services of Early County, LLC,* No. 16-01243-NPO, filed its Chapter 11 bankruptcy case on April 8, 2016, and was administratively consolidated into the "main" case of *Pioneer Health Services, Inc.,* No. 16-01119-NPO, on April 15, 2016. Debtor *Medicomp, Inc.,* No. 16-01126, filed its Chapter 11 bankruptcy case on March 30, 2016, and was administratively consolidated into the "main" case of *Pioneer Health Services, Inc.,* No. 16-01119-NPO, on June 29, 2016.

other credit parties owed CONA in excess of $7.7 million pursuant to the Revolving Credit Documents (as such term is defined in the Final Cash Collateral Order) secured by a lien in all or substantially all of those Debtors' assets and proceeds thereof.  Moreover, as set forth in the Final Cash Collateral Order and proofs of claim filed by CONA, as of the Petition Date, Stokes, Monroe, Oneida, Early, Patrick, and Newton owed CONA in excess of $1.7 million pursuant to the Term Loan Credit Documents (as such term is defined in the Final Cash Collateral Order) secured by a lien in all or substantially all of those Debtors' assets and proceeds thereof.

5. As set forth in the Final Cash Collateral Order and various proofs of claim filed by the IRS, as of the Petition Date, the Debtors owed the IRS in excess of $10.7 million, a portion of which liability is secured by all or substantially all of the Debtors' assets and proceeds thereof.

6. Each of the Debtors, and one of PHS's non-Debtor subsidiaries, has either sold all or substantially all of their respective assets (the "Sales") or ceased operating altogether without such a sale.[2]  The Sales are among other things, evidenced by various sale orders entered by the Court. *See* Docket No. 1501 (Stokes Sale Order), Docket No. 1537 (Oneida Sale Order), Docket No. 1748 (Rural Solutions Sale Order), Docket No. 2211 (Monroe Sale Order), Docket No. 2551 (Stokes MOB Sale Order),[3] Docket No. 2257 (Early Sale Order), Docket No. 2639 (Medicomp Sale Order), and Docket No. 2737 (PHS Sale Order) (collectively, the "Sale Orders"). The proceeds of the Sales are currently being held in escrow accounts established for

---

[2] Patrick ceased operating on September 15, 2017.  Newton ceased operating prior to the Petition Date, and Choctaw sold its assets, other than accounts receivable, prior to the Petition Date.

[3] The proceeds of the Stokes MOB sale have already been disbursed to CONA, the IRS, and the Debtors pursuant to an Order of the Court.  *See* Docket No. 3436.

the Debtors by Debtors' counsel (the "Sales Proceeds").  Pursuant to the terms of the Sale Orders, the alleged collateral of certain of the holders of Filed Secured Claims and the Scheduled Secured Claims was (1) expressly determined to be excluded from the Sales or (2) purchased by the applicable buyer for cash consideration paid directly to the applicable holder of a Filed Secured Claim or a Scheduled Secured Claim as to the specific collateral sold.  In either event, the applicable creditors consequently cannot claim an interest in any of the Sales Proceeds or that such proceeds are in any way attributable to their alleged collateral.[4]  Furthermore, pursuant to other orders of the Court, certain other creditors have agreed that their Filed Secured Claims and/or Scheduled Secured Claims have otherwise and already been satisfied in full.  Finally, given the resolution in Section 5.3 and 5.5 of the Plan of certain of the secured claims of the Bank of Early, this Motion to Value does not seek relief as to such secured claims.

7. In addition to the Sales Proceeds, the Debtors' remaining assets include working capital (including cash collateral of CONA and/or the IRS held in the Debtors' bank accounts (including escrow accounts) and accounts receivable), the Avoidance Actions (as such term is defined in the Plan), and the Estate Actions (as such term is defined in the Plan), real property, and certain other personal property such as equipment and other furniture and fixtures that were excluded from the Sales wherever such property may be located.

8. On March 30, 2018, Movants filed their *Joint Liquidating Chapter 11 Plan* [Docket No. 2919] and on June 11, 2018, filed their *Joint Immaterial Modification to Joint Liquidating Chapter 11 Plan of the Debtors* [Docket No. 3273] (collectively, the "Plan").

9. With respect to Secured Claims other than Secured Claims held by CONA or the IRS, the Plan provides that:

---

[4] *See*, *e.g.*, Monroe Sale Order [Docket No. 2211] at ¶2; Early Sale Order [Docket No. 2257] at ¶2.

> All holders of Allowed Secured Claims against an applicable Debtor other than the IRS or CONA (whose Secured Claims are treated under Classes 2, 3, and 4 of the Plan), shall receive in full satisfaction, release, and discharge of and in exchange of their Secured Claim against an applicable Debtor, **either (i) their Collateral or (ii) all Cash that is *attributable to any Collateral* in which such Secured Creditor holds a Lien**, *provided, that*, such right shall be subject to the determination of the extent, validity, and priority of such Lien and Claim, and any objection thereto that may be filed by the Debtors or the Liquidating Trustee (as the case may be), or the Committee or the Beneficiaries Committee (as the case may be). **If an objection to any such Claim as a Secured Claim is sustained in whole or in part, then the portion of the asserted Secured Claim that is determined to be a Deficiency Claim against an applicable Debtor shall be treated as an Allowed Unsecured Claim under *Class 8[5] of the Plan* with respect to that Debtor**.

*See* Plan at 5.5 (emphasis added).

10. With respect to establishing reserve accounts related to disputed Secured Claims, the Plan provides in pertinent part that:

> On or before the Effective Date, the Liquidating Trustee shall establish the Disputed APS Claims Reserve, the Disputed Unsecured Claims Reserve, the Disputed Convenience Claims Reserve, the Distribution Reserve, and the IRS/CONA Distribution Reserve for each respective Debtor. On or about the Effective Date, for each respective Debtor, **the Liquidating Trustee shall fund with Cash in an amount sufficient to pay the Disputed Claims based upon the <u>lesser of (a) the amount claimed in the filed claim by the holder of such Disputed Claim, or (b) the estimated amount of such Claim, as determined by an Order of the Bankruptcy Court</u>, for the Applicable Debtor: (i) a Disputed APS Claims Reserve for all Disputed Administrative Expense Claims, all Disputed Priority Tax Claims, all Disputed Priority Claims, <u>all Disputed Secured Claims</u> and all estimated unpaid Professional Claims (subject to the Professional Fee Cap) for the applicable Debtor**; (ii) a Disputed Unsecured Claims Reserve with Cash in an amount sufficient to pay the Pro Rata Share of all Disputed Unsecured Claims; and (iii) a Disputed Convenience Claims Reserve with Cash in an amount sufficient to pay the percentage recovery set forth in Section 5.9 of this Plan in Cash to the holders of Disputed Convenience Claims for the applicable Debtor. To the extent the Liquidating Trustee determines to pay an undisputed portion of any Disputed Claim of the type

---

[5] Class 8 is comprised of general unsecured claims under the Plan, including the Deficiency Claims of all alleged secured creditors other than CONA and the IRS. *See* Plan at 5.8. It is noteworthy that CONA and the IRS have voluntarily agreed to have their Deficiency Claims treated less favorably than the Deficiency Claims of other similarly situated secured creditors. *See* Plan at 5.6 and 5.7.

03036121                               5

> described above, the Liquidating Trustee shall be allowed to reduce the amount reserved for that Claim in the appropriate Reserve Account for the applicable Debtor.  **To the extent that any Claim is estimated pursuant to section 8.7 of this Plan, the Liquidating Trustee shall be allowed to adjust the applicable Reserve Account for the applicable Debtor in accordance with such estimation.**

*See* Plan at 8.3 (emphasis added).[6]

11.    On May 29, 2018, Patrick filed a *Motion to Abandon Personal Property of the Debtor's Estate Located at Debtor's Former Hospital in Patrick County, Virginia* [Docket No. 3193] the "Patrick Abandonment Motion."  On June 15, 2018, the Court entered its Order granting the Patrick Abandonment Motion.  *See* Docket No. 3301.

12.    Contemporaneous with filing this Motion to Value, the Debtors other than Patrick each filed a Notice of Abandonment in order to abandon any and all of their respective personal property assets, *except for* cash on hand in bank accounts or held in escrow (including the Sales Proceeds), accounts receivable, certain real property, the Avoidance Actions, and the Estate Actions (collectively, the "Remaining Estate Assets").  *See* Docket Nos. 3479 (PHS), 137 (Newton), 156 (Stokes), 106 (Choctaw), 133 (Oneida), 160 (Monroe), 328 (Medicomp), and 176 (Early).

13.    With certain limited exceptions inapplicable to the Filed Secured Claims and the Scheduled Secured Claims,[7] CONA or the IRS maintains a first priority lien in the Remaining

---

[6]    Under the Plan, a "Disputed Claim" is a "Claim or any portion thereof which has not become Allowed and which is not a Disallowed Claim."  *See* Plan at 1.2.55.  A Claim is not a "Disallowed Claim" under the Plan until it has been disallowed by a "Final Order" (*see* Plan at 1.2.52), and an order is not a "Final Order" until the time to appeal has run and any appeal, if filed, has been decided with no further right to review, rehearing, certiorari or reargument (*see* Plan at 1.2.76).

[7]    In any event, the relief sought in this Motion to Value does not apply to the secured claims of Prime Alliance Bank, Inc., in the Oneida case.  As the parties have previously advised

Estate Assets (not including the Avoidance Actions, in which no party in interest holds a lien). Further, with certain limited exceptions inapplicable to the Filed Secured Claims and the Scheduled Secured Claims, CONA or the IRS maintains a second priority lien in the Remaining Estate Assets (not including the Avoidance Actions, in which no party in interest holds a lien). Accordingly, any alleged liens held by the Filed Secured Claims and the Scheduled Secured Claims in the Remaining Estate Assets are junior to the liens held by CONA and the IRS in those assets.[8] In any event, the Movants believe that none of the Available Cash (as such term is defined in the Plan) in the possession of the Debtors or their estates as of the filing of this Motion to Value is subject to a lien senior to those held by CONA and the IRS in such Available Cash; without limiting the generality of the foregoing statement, the Movants believe that none of the Available Cash in the possession of the Debtors or their estates as of the filing of this Motion to Value is necessary to fund the APS Claims Reserve on account of any Filed Secured Claim or Scheduled Secured Claim.

14. As of the date of this Motion to Value, the sum of CONA's and the IRS's unpaid secured claims, without consideration of their respective rights, if any, to post-petition interest and fees, exceeds the value of the Remaining Assets (not including the Avoidance Actions, in which no party in interest holds a lien). Moreover, to date, all of the administrative expenses of these bankruptcy cases, including but not limited to transaction costs related to the Sales for fees owed to Solic Capital Advisors, LLC and Waller Lansden Dortch & Davis LLP, have been paid from the cash collateral of CONA and the IRS. To the extent that a holder of a Filed Secured Claim or a Scheduled Secured Claim asserts and is able to establish that it holds a lien of any

---

the Court, the parties have resolved such claims and such resolution will be set forth in any order of the Court confirming the Plan.

[8] Pursuant to the Final Cash Collateral Order, only the Committee still has the ability to challenge the validity of CONA's or the IRS's liens or claims.

value in any of the Sale Proceeds, Movants respectfully submit that it would be equitable and appropriate for such creditor to share in the administrative expenses incurred by the Debtors' estates and that such creditor's interest be subjected to surcharge under 11 U.S.C. § 506(c). Movants reserve all applicable rights in this regard.

### Requested Relief

15.     Movants seek an order from this Court determining that the amount of each of the Filed Secured Claims and each of the Scheduled Secured Claims is $0.00, and therefore, such claims should be classified as Class 8 Unsecured Claims under the terms of the Plan. *Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1354 (5th Cir. 1989) (it is appropriate for the bankruptcy court to determine collateral valuation matters at the time of its consideration of plan confirmation). Rule 3012 of the Bankruptcy Rules provides in pertinent part that "[o]n request by a party in interest and after notice—to the holder of the claim and any other entity the court designates—and after a hearing the court may determine: (1) the amount of a secured claim under § 506(a) of the Code." Section 506(a) of the Bankruptcy Code provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title**, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is *less than* the amount of such allowed claim**. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1) (emphasis added).

16.     Relatedly, and because Movants are requesting that this Motion to Value be heard at the confirmation hearing and, therefore, any Order this Court enters granting this Motion to Value will not yet be a final order as of confirmation, Movants also request that the Court

determine that the appropriate reserve under the Plan for each of the Filed Secured Claims and each of the Scheduled Secured should be $0.00. Section 502(c) of the Bankruptcy Code provides:

> There shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, **would unduly delay the administration of the case**; or (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c) (emphasis added). Because the amount of each of the Filed Secured Claims and each of the Scheduled Secured Claims is $0.00 and the Debtors' have abandoned any other assets, in order to avoid any undue delays in the administration of these bankruptcy cases, Movants request that the Court determine that the appropriate reserve under the Plan for each of the Filed Secured Claims and each of the Scheduled Secured Claims is $0.00.

**A. The Filed Secured Claims and the Scheduled Secured Claims are Valueless as Secured Claims, and Should be Properly Categorized as Class 8 Unsecured Claims under the Plan.**

17. Pursuant to Section 506(a) of the Bankruptcy Code a secured creditor's claim is only secured to the extent of the value of its interest in the estate's interest in property it claims as collateral. *See* 11 U.S.C. § 506(a) (bifurcating creditor's secured and unsecured claims based on the value of the creditor's interest in the estate's interest in such property). As set forth above, with certain limited exceptions, CONA or the IRS maintain a first and/or second priority lien in the Remaining Estate Assets, and the amount of their secured claims exceeds the value of the Remaining Assets (not including the Avoidance Actions, in which no party in interest holds a lien). Accordingly, the holders of the Filed Secured Claims' and the holders of the Scheduled Secured Claims' respective interests in the Debtors estates' interests in the Remaining Estate Assets (which are fully encumbered by CONA's and the IRS's liens) have *no value*. Further, to the extent that the holders of the Filed Secured Claims and the holders of the Scheduled Secured

Claims maintain that they hold a lien in property other than the Remaining Estate Assets, the Debtors have abandoned those assets, and the Debtors' estates no longer have *any* interest in those assets. *See In re Perry*, 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008) (abandoned property "no longer comprises part of the . . . estate[;]" accordingly, a creditor with an interest in abandoned property "no longer has a secured claim" and retains only an unsecured claim). Therefore, the holders of the Filed Secured Claims and the holders of the Scheduled Secured Claims do not hold a lien on any asset of the Debtors' estates that has any value; their respective secured claims are $0.00; and their remaining Deficiency Claims should be categorized as Class 8 Unsecured Claims under the Plan.[9] *See* Plan at 5.5 (providing that Deficiency Claim of Secured Creditors, other than CONA or the IRS, shall be treated as Class 8 Unsecured Claims). Movants respectfully request that the Court enter an order pursuant to Rule 3012 of the Bankruptcy Rules and 11 U.S.C. § 506(a)(1) determining that the amount of each of the Filed Secured Claims and each of the Scheduled Secured Claims is $0.00 (with the full dollar amount of each such filed and scheduled claim constituting a Deficiency Claim under the Plan).[10]

**B. The Filed Secured Claims and Scheduled Secured Claims Should be Estimated for Purposes of Establishing a Reserve Under the Plan at $0.00.**

18.     Under Class 5 of the Plan, the holders of the Filed Secured Claims and the Scheduled Secured Claims are entitled to either: (1) retain their Collateral or (2) receive a distribution from the Debtors of any Cash in the possession of the Debtors that is actually "attributable" to the disposition of that Secured Creditor's Collateral to the extent that such

---

[9]     Movants expressly reserve the right to file an objection as to amount of the remaining Deficiency Claims of the holders of the Filed Secured Claims and the holders of the Scheduled Secured Claims. Under the Plan the Liquidating Trustee retains the right to object to such claims with 90 days of the Effective Date. *See* Plan at 7.1.

[10]    *See* footnote 8, *supra*.

Secured Creditor's interest in such Collateral has any value.  *See* Plan at 5.5.  As set forth above, none of the Remaining Estate Assets (including, without limitation, Cash) is attributable to the disposition of any asset (including, without limitation, any "Secured Creditor's Collateral) encumbered by any lien held by a holder of any of the Filed Secured Claims or the Scheduled Secured Claims that is senior or equal in priority to the first and/or second priority liens in favor of CONA and the IRS that otherwise encumber all such assets.  Moreover, the Debtors have abandoned their interests in all property other than the Remaining Estate Assets.  Because the Debtors no longer hold any interest in any alleged collateral of the holders of the Filed Secured Claims and the Scheduled Secured Claims or any Cash that is attributable to such holders' respective asserted liens within the meaning of Section 5.5 of the Plan, all of those Claims should be estimated at $0.00 (under 11 U.S.C. § 502(c)), for purposes of establishing reserves under the Plan.

## Notice

19.     Service of the Motion to Value and accompanying notice thereof will be made to the Reduced Service List and to each of the holders of Filed Secured Claims and/or Scheduled Secured Claims in accordance with the Bankruptcy Code and the Bankruptcy Rules.

WHEREFORE, Movants respectfully request that the Court enter an order: (i) granting this Motion to Value, (ii) finding that Movants provided notice of this Motion to Value on each of the holders of Filed Secured Claims and/or Scheduled Secured Claims in accordance with the Bankruptcy Code and the Bankruptcy Rules, (iii) classifying each of the Filed Secured Claims as Class 8 Claims and estimating the appropriate reserve under Class 5 of the Plan for each of the Filed Secured Claims at $0.00, (iv) classifying each of the Scheduled Secured Claims as Class 8 Claims and estimating the appropriate reserve under Class 5 of the Plan for each of the

Scheduled Secured Claims at $0.00, and (v) granting Movants such other relief as the Court deems just and appropriate.

Respectfully submitted this 20th day of July 2018.

    ARNALL GOLDEN GREGORY LLP

    */s/ Darryl S. Laddin*
    Darryl S. Laddin (GA Bar No. 460793)
    (Admitted *Pro Hac Vice*)
    Sean C. Kulka (GA Bar No. 648919)
    (Admitted *Pro Hac Vice*)
    171 17th Street, N.W., Suite 2100
    Atlanta, Georgia 30363-1031
    Phone: (404) 873-8500
    Fax: (404) 873-8501
    Email: darryl.laddin@agg.com
    Email: sean.kulka@agg.com

    */s/ James A. McCullough, II*
    James A. McCullough, II (MS Bar No. 10175)
    Brunini, Grantham, Grower & Hewes, PLLC
    Post Office Drawer 119
    Jackson, Mississippi 39205
    Telephone: (601) 948-3101
    Fax: (601) 960-6902
    Email: jmccullough@brunini.com

    *Attorneys for the Official Committee of Unsecured Creditors of Pioneer Health Services, Inc., et al.*

    -and-

    */s/ Craig M. Geno*
    Craig M. Geno, Esq. (MS Bar No. 4793)
    LAW OFFICES OF CRAIG M. GENO, PLLC
    587 Highland Colony Parkway
    Ridgeland, MS 39157
    Telephone: (601) 427-0048
    Facsimile: 601-427-0050 -
    Email: cmgeno@cmgenolaw.com

    *Attorneys for Pioneer Health Services, Inc., et al.*

**CERTIFICATE OF SERVICE**

I, James A. McCullough, II, do hereby certify that I have this date caused to be filed a true and correct copy of the above and foregoing utilizing the Court's CM/ECF electronic filing system, which provides electronic notice to all parties who have entered an appearance, including:

    Craig M. Geno (cmgeno@cmgenolaw.com)
    Ronald H. McAlpin (Ronald.mcalpin@usdoj.gov)
    Christopher James Steiskal, Sr. (christopher.j.steiskal@usdoj.gov)
    Douglas C. Noble (dnoble@mmqnlaw.com¬
    William H. Leech (bleech@cctb.com)
    Marcus M. Wilson (mwilson@blswlaw.com)
    Andrew R. Wilson (awilson@blswlaw.com)
    Kristina M. Johnson (kjohnson@joneswalker.com)
    Stephanie B. McLarty (smclarty@joneswalker.com)
    J. Walter Newman IV (wnewman95@msn.com)
    Joe A. Joseph (jjoseph@burr.com)
    John M. Lassiter (jlassite@burr.com)
    Derek A. Henderson (derek@derekhendersonlaw.com)
    Jeremy L. Retherford (jretherford@balch.com)
    Jim F. Spencer, Jr. (jspencer@watkinseager.com)
    Kevin A. Rogers (krogers@wellsmar.com)
    Michael A. Condyles (Michael.Condyles@KutakRock.com)
    Jeremy S. Williams (Jeremy.Williams@KutakRock.com)
    Larry Spencer (spencer@kingandspencer.net)
    Charles F. F. Barbour (cbarbour@blswlaw.com)
    G. Grant Greenwood (ggreenwood@jamesbatesllp.com)
    James D. Waide (waide@waidelaw.com)
    Eileen N. Shaffer (enslaw@bellsouth.net)
    Gregory A. Moffett (gmoffett@preti.com)
    William R. Armstrong, Jr. (warmstrong@wrapa.comcastbiz.net)
    Robert E. Dozier (robert.e.dozier@usdoj.gov)
    Jeffrey K. Garfinkle (jgarfinkle@buchalter.com)
    Steven T. Holmes (sholmes@chfirm.com)
    Stephen T. Masley (smasley@mcglinchey)

Dated: August 3, 2018.

                                                             */s/ James A. McCullough, II*

# EXHIBIT A

# SCHEDULED OF FILED SECURED CLAIMS

15

# EXHIBIT B

# SCHEDULE OF SCHEDULED SECURED CLAIMS

03036121

15