**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| PIONEER HEALTH SERVICES, INC., ET AL., | : | CASE NO. 16-01119-NPO |
| | : | JOINTLY ADMINISTERED |
| Debtors. | : | |

**SUPPLEMENTAL JOINT REPLY OF THE COMMITTEE, THE DEBTORS, AND CAPITAL ONE, N.A. TO THE OBJECTION OF JAMISON TRUST TO CONFIRMATION OF PLAN FOR PIONEER HEALTH SERVICES OF MONROE COUNTY, INC. WITHOUT PAYMENT OF ITS ADMINISTRATIVE EXPENSES**

The Official Committee of Unsecured Creditors of the jointly administered cases of Pioneer Health Services, Inc., et al. (the "Committee") and Pioneer Health Services, Inc., et al. (the "Debtors"; and together with the Committee, the "Plan Proponents"), along with Capital One, N.A. ("CONA") file this supplemental joint response to the Objection of Jamison Trust (the "Trust") to Confirmation of Plan for Pioneer Health Services of Monroe County, Inc. Without Payment of Its Administrative Expenses [Dkt. 3232]. In support of their Reply, the Plan Proponents and CONA respectfully state as follows:

**Preliminary Statement**

The Trust's alleged administrative claim is the subject of separate litigation pending in this Court and has not been resolved prior to the hearing on confirmation of the Plan. Based on its conduct throughout these bankruptcy cases, the Trust appears to believe that the rules and orders of this Court do not apply to it (*e.g.*, it does not have to object to motions and is not bound by the orders approving those motions; it does not have to respond to document requests or produce a Rule 30(b)(6) witness because it wrote a letter setting forth its version of the facts; it

does not have to engage with the parties as to its claims, even after the filing of its lawsuit). The overstated reserve amount recently requested by the Trust is no exception.

Pursuant to the terms of the Plan, the Plan Proponents must establish a reserve for the Trust's disputed administrative claim, but as set forth below, the Court may consider the Debtors' defenses to such claim. The Court need not look beyond the plain language of the Trust's Lease in order to calculate the reserve. For the reasons set forth below, the Plan Proponents respectfully request that the Court set the reserve in the amount of $370,863.18.

## Background

1. On May 1, 2018, the Trust filed a complaint initiating Adversary Proceeding Case No. 18-00026 (the "Trust Adversary Proceeding") and a Motion for Entry of an Order Allowing an Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) and § 507(A)(2) [Dkt. No. 3007] (the "Administrative Expense Request," collectively with the Trust Adversary Proceeding, the "Jamison Litigation").

2. On June 8, 2018, Monroe filed an Objection to the Administrative Expense Request [Dkt. 3251] (the "Objection to Administrative Expense Request"), which was joined by CONA [Dkt. 3252] and the Committee [Dkt. 3258]. Also on June 8, 2018, Debtors Pioneer Health, Inc. ("Pioneer Health") and Pioneer Health Services of Monroe County, Inc. ("Monroe") filed their Answer and Defenses in the Trust Adversary Proceeding [AP Dkt. 15]. At the heart of the dispute with the Debtors is the non-payment of an alleged cure claim in connection with the assumption and assignment of a lease (the "Trust's Lease") by and between the Trust, Pillars of Aberdeen, LLC, and Pioneer Community Hospital of Aberdeen, a department of Monroe. In short, Monroe asserts that the Trust is not entitled to a cure claim because neither the Omnibus Assumption Order [Dkt. 1577], the Sale Order [Dkt. 2211], nor the Boa Vida Assignment Order

[Dkt. 2216] approved a cure claim for the Trust (and did so without objection from the Trust to the various motions for entry of such orders). Further, to the extent the Court determines that there is liability for a cure claim, as set forth in detail in the Objection to Administrative Expense Request, Boa Vida is the party responsible for any cure payment should one be required and the Debtors reserve all of their rights in connection therewith.[1] *See* Sale Order, ¶ 2.5.

3. On June 11, 2018, the Plan Proponents filed their Joint Consolidated Response to (i) United States Trustee's Objection to Joint Liquidating Plan Chapter 11 Plan; and (ii) Limited Objection to Confirmation of Liquidating Plan Filed by First Guaranty Bank [Dkt. 3269] wherein they stated that they (and CONA and the Internal Revenue Service) were "prepared to consent to the funding of specific reserves to address" the objection to confirmation of the Plan by the Trust and reserved all rights consistent with section 8.7 of the Plan in connection therewith. *See* Dkt. 3269 at ¶ 4, n.2.

4. On June 12, 2018, the Trust filed its Corrected Objection to Confirmation of Plan for Pioneer Health Services of Monroe County, Inc. Without Payment of Its Administrative Expenses [Dkt. 3290] (the "Trust Plan Objection"). The Trust Plan Objection provides that the Debtor and/or Boa Vida Hospital of Aberdeen, MS, LLC ("Boa Vida") are liable to the Trust for certain taxes, unspecified interest, penalties, rent, late fees, attorneys' fees, and other costs of collection. The only liquidated ad damnum amounts included the Trust Plan Objection, the Administrative Expense Request, and the Trust Adversary Proceeding are for ad valorem taxes in

---

[1] As further set forth in detail in the Objection to Administrative Expense Request, the parties submit that it would be unjust for Boa Vida to now be forced to pay this claim. In any event, the Debtors reserve all rights and defenses with respect thereto.

03059805                                    3

the amount of $82,076.39 for 2013, $82,795.20 for 2014, and $80,442,70 for 2015, for a total claim of $245,314.29.[2]

5.  On June 12, 2018, this Court entered a Scheduling Order in the Trust Adversary Proceeding [AP Dkt. 17], which requires all fact discovery to be completed no later than September 10, 2018. Scheduling Order, ¶ 3.

6.  So as to provide the full response period in advance of the fact discovery deadline, on August 3, 2018, the Committee served the Trust with document requests and a Notice of Rule 30(b)(6) Deposition [AP Dkt. 25], which provided that the documents were due on September 3, 2018 and the 30(b)(6) witness(es) would be deposed on September 4, 2018.[3] The Trust has not served any discovery and it has not responded to the Committee's document requests.

7.  On August 9, 2018, counsel for the Committee spoke with counsel for the Trust regarding the Jamison Litigation wherein counsel for the Trust raised informal objections to the discovery and indicated that counsel may not be available on the proposed deposition date. Thereafter, counsel for the Committee made numerous attempts to contact counsel for the Trust regarding the discovery and the date of the deposition.

8.  Finally, on the evening of August 21, 2018, counsel for the Trust sent a letter to counsel for the Committee, copying counsel for the Debtors and CONA, regarding the Jamison Litigation.[4] The letter included a self-serving recitation of the "facts" asserted by the Trust in the

---

[2] The Debtors had been using this number as the proposed reserve.

[3] The Committee also has been attempting to serve a subpoena on Mr. John W. Jamison, III [AP Dkt. 26, 28], but, to date, Mr. Jamison has not been personally served.

[4] On the morning of August 23, 2018, counsel for the Committee responded to the August 21, 2018 letter, solely to address the need for discovery and the scheduled date for the Rule 30(b)(6) deposition. After receiving no response to any inquiries regarding rescheduling the deposition date, counsel for the Committee sent another email on August 29, 2018, stating that the Rule 30(b)(6) deposition would go forward on September 4, 2018. On August 31, 2018,

Jamison Litigation, attached some correspondence and a Fair Market Value Consultant Reporting Form, and for the first time, asserted a claim in excess of $528,843.81, calculated as follows:

| | |
|---|---|
| January - March 2016 at $28,421.88 = | $ 85,265.64 |
| 18 mos. postpetition, presale at $28,421.88 = | $511,593.84 |
| 2013 and 2014 ad valorem taxes = | $164,204.87[5] |
| 2015 and 2016 ad valorem taxes = | $156,657.31[6] |
| Rent paid post-petition ($16,667.67/mo.) = | ($300,018.06) |
| 8% interest on $11,754.21/mo. as of 9/1/18 = | $ 29,777.56 |
| 8% interest on Jan 2016 - March 2016 rent = | $ 18,189.99 |
| 8% interest on 2013 taxes redeemed 9/1/16 = | $ 13,073.84 |
| 8% interest on 2014 taxes redeemed 9/1/17 = | $  6,599.47 |
| | $528,843.81[7] |

9. Also, on August 21, 2018, counsel for Boa Vida, the other defendant in the Trust Adversary Proceeding, sent two emails to counsel for the Trust requesting that the Trust immediately pay $83,000.56 for 2015 taxes to avoid a tax sale of the property on August 24, 2018. On August 24, 2018, counsel for Boa Vida called and emailed counsel for the Trust inquiring whether the Trust intended to pay the 2015 taxes. Again receiving no response, counsel for Boa Vida ultimately informed counsel for the Trust that Boa Vida would pay the 2015 taxes, though it contends it is not obligated to do so, and will credit that payment against a portion of the rent owed by Boa Vida to the Trust.

---

counsel for the Trust confirmed that the Rule 30(b)(6) deposition could not go forward on September 4, 2018. Accordingly, the Rule 30(b)(6) deposition has been canceled, without waving any rights to conduct the deposition at a later date.

[5] The amount of the 2013 and 2014 ad valorem taxes set forth in the Trust Plan Objection, the Administrative Expense Request, and the Trust Adversary Proceeding is $164,871.59. The Plan Proponents will use this updated figure of $164,204.87 in their calculation for the proposed reserve amount for 2013 and 2014 ad valorem taxes.

[6] The Trust Plan Objection, the Administrative Expense Request, and the Trust Adversary Proceeding do not identify an amount for 2016 ad valorem taxes. Based on the amount asserted by the Trust for 2015 taxes in its prior pleadings, the Plan Proponents assume that the amount asserted for 2016 taxes is $76,214.61.

[7] The total provided by the Trust does not compute. The total of all amounts listed by the Trust should be $685,344.46.

**Argument**

10. The Plan Proponents do not want to turn the confirmation hearing into a premature mini-trial on the Administrative Expense Request in order to establish the Trust's reserve. However, on its face, the amount recently asserted by the Trust is grossly overstated.

11. Section 8.7 of the Plan permits estimation of any disputed claim, and the estimated amount may constitute either the allowed amount of the claim or a maximum limitation on the claim under the Plan.

12. In establishing reserves for the payment of disputed administrative claims (including liquidated claims) in the context of assessing the feasibility of a plan, the parties responsible for setting the reserves are permitted to take into account the likelihood that such claims actually will need to be paid. *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 429 (Bankr. S.D.N.Y. 2003). In *Adelphia*, the court endorsed the plan proponent's contention that, for purposes of establishing reserves under its plan, the proponent could reduce its anticipated exposure with respect to a liquidated, disputed administrative claim based on defenses against the administrative claimant prior to the adjudication of the administrative claim. *Id.* at 426-29; *see also, e.g.*, *In re Enron Corp.*, 2006 WL 544463 at *7 (Bankr. S.D.NY. Jan. 17, 2006) ("it has been noted that because a deferral of a distribution affects the efficient administration of a case, the possibility of such deferral provides a justification for estimation of a claim."); *In re Medical Group, PC*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) (finding estimation appropriate when "litigation will take too long and unduly delay distribution of the estate's assets.").

13. The bulk of the Trust's claim is for inflated rent and interest, neither of which the Trust is entitled to under the terms of the Trust's Lease. Prior to the bankruptcy case, in accordance with the Trust's Lease, Monroe made monthly payments of $16,667.67. The "Initial

Term" of the Trust's Lease expired on December 21, 2015, and was subject to two consecutive terms of five years each "at a price to be negotiated." Lease, § 2. The Trust admits that prior to the petition date, the parties were negotiating a new monthly rental payment. *See, e.g.,* Complaint, ¶ 8; Administrative Expense Request, ¶ 8. Having reached no agreement, the Trust admits that the Debtor continued to pay $16,667 per month, which the Trust accepted without objection. *See e.g.,* Complaint, ¶ 10; Administrative Expense Request, ¶ 10.

14. Despite the plain language of the Trust's Lease that the price would be negotiated and the Trust's acceptance (without objection) of $16,667 per month postpetition, the Trust now asserts that as of January 1, 2016 the rent should have been calculated at a "fair market value," which the Trust asserts is $28,421.88 per month. Accordingly, the Trust's claim for rent is overstated by $294,807.97, including interest.[8]

15. The Trust also has asserted 8% interest not only on its inflated rent calculation, but also on taxes paid by the Trust. The Trust's Lease does not provide for the payment of interest, so the Trust appears to be asserting a claim for the maximum interest rate allowable by state law. Assuming Mississippi state law governs the claim calculation, if the contract does not include the provision of interest, a judgment may "bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." Miss. Code Ann. § 75-17-7 (2018). As noted above, the Trust Adversary Proceeding was initiated on May 1, 2018. Accordingly, this Court has the authority to estimate the interest rate to be 0% for purposes of establishing the reserve.

---

[8] This figure is comprised of the difference between the alleged "fair market" rent of $28,421.88 and the regular monthly rental payment made by the Debtor of $16,667 plus interest on those amounts as follows:

| | |
|---|---|
| Rent for January – March 2016 = $ 85,265.64 - $50,001 = | $ 35,264.64 |
| Rent for 18 mo. postpetition, presale = $511,593.84 - $300,018.06 = | $211,575.78 |
| 8% interest on $11,754.21/mo. as of 9/1/18 = | $ 29,777.56 |
| 8% interest on Jan 2016- March 2016 rent = | $ 18,189.99 |
| | $294,807.97 |

**Conclusion**

The Plan Proponents and CONA dispute that the Trust is entitled to any claim, and to the extent any such claim is allowed, Boa Vida is liable for it. Although the only liquidated ad damnum amounts included in the Trust Plan Objection, the Administrative Expense Request, and the Trust Adversary Proceeding total $245,314.29, the Plan Proponents and CONA are willing to agree to reserve $370,863.18 on account of the Trust's disputed claim in accordance with the terms of the Plan. Accordingly, for the reasons set forth herein, the Plan Proponents and CONA respectfully request that the Court establish a reserve for the Trust in the following amount:

```
Rent for January - March 2016 at $16,667/mo = $ 50,001.00
2013 and 2014 ad valorem taxes =               $164,204.87
2015 and 2016 ad valorem taxes =               $156,657.31
                                               $370,863.18
```

Respectfully submitted this 5th day of September 2018.

/s/ Darryl S. Laddin
Darryl S. Laddin (GA Bar No. 460793)
(Admitted *Pro Hac Vice*)
Sean C. Kulka (GA Bar No. 648919)
(Admitted *Pro Hac Vice*)
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500
Fax: (404) 873-8501
Email: darryl.laddin@agg.com
Email: sean.kulka@agg.com

/s/ James A. McCullough, II
James A. McCullough, II (MS Bar No. 10175)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Fax: (601) 960-6902
Email: jmccullough@brunini.com

*Attorneys for the Official Committee of Unsecured Creditors*

-and-

*/s/ Craig M. Geno*
Craig M. Geno, Esq. (MS Bar No. 4793)
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
Telephone: (601) 427-0048
Facsimile: (601) 427-0050
Email: cmgeno@cmgenolaw.com

*Attorneys for the Debtors*

-and-

*/s/ Brian I. Swett*
Brian I. Swett
(Admitted *Pro Hac Vice*)
Sarah B. Boehm
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020-1104
Telephone: (212) 548-7029
Facsimile: (212) 715-6263
Email: bswett@mcguirewoods.com
Email: sboehm@mcguirewoods.com

*Attorneys for Capital One, N.A.*

## **CERTIFICATE OF SERVICE**

I, James A. McCullough, II, do hereby certify that I have this date caused to be filed a true and correct copy of the above and foregoing utilizing the Court's CM/ECF electronic filing system, which provides electronic notice to all parties who have entered an appearance, and served by electronic mail the following:

Craig M. Geno (cmgeno@cmgenolaw.com)
Ronald H. McAlpin (Ronald.mcalpin@usdoj.gov)
Christopher James Steiskal, Sr. (christopher.j.steiskal@usdoj.gov)
Derek A. Henderson (derek@derekhendersonlaw.com)
David Anderson (dbanderson@andersonweidner.com)
Deanna Wiedner (dlweidner@andersonweidner.com)
Robert E. Dozier (robert.e.dozier@usdoj.gov)
Brian I. Swett (BSwett@mcguirewoods.com)

Dated:  September 5, 2018.

*/s/ James A. McCullough, II*